THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHNATHAN THACKER <br> 303 S. Front Street <br> Apt. 116 <br> Columbus, Ohio 43215 <br><br> Plaintiff, <br><br> v. <br><br><br> CREATIVE FOUNDATIONS, INC. <br> 57 N. Sandusky Street <br> Delaware, OH 43015 <br><br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : CASE NO. 2:19-cv-4151 <br> : <br> : JUDGE <br> : <br> : MAGISTRATE JUDGE <br> : <br> : **Jury Demand Endorsed Herein** <br> : <br> : <br> : <br> : |

## COMPLAINT

NOW COMES Plaintiff Jonathan Thacker ("Plaintiff") and proffers this Complaint for damages against Defendant Creative Foundations, Inc. ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. Chapter 4111, and O.R.C. Chapter 4112. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

2. Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio, Plaintiff

performed his job duties there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

3. Plaintiff was an "employee" as defined in Chapters 4111 and 4112 of the Ohio Revised Code, and as defined in the Fair Labor Standards Act.

4. Defendant is an "employer" as defined in Chapters 4111 and 4112 of the Ohio Revised Code, and as defined in the Fair Labor Standards Act.

## THE PARTIES

5. Plaintiff is a natural person residing in Franklin County, Ohio.

6. Defendant is a corporation incorporated under the laws of the State of Ohio.

7. Defendant conducts business in the Southern District of Ohio and employed Plaintiff in the Southern District of Ohio.

## FACTUAL BACKGROUND

8. Plaintiff Jonathan Thacker was hired by Defendant in January of 2018 as a Compliance and Quality Assurance Director.

9. Plaintiff demonstrated his value to Defendant from the beginning, which was quickly noticed by David Robins, Defendant's owner and Executive Director.

10. Robins expressed his satisfaction with Plaintiff's work performance and indicated an intent to create a Director of Operations position for Plaintiff.

11. In or around March of 2018, Plaintiff was promoted and became the Director of Operations. He received an increase in pay at this time.

12. Plaintiff continued to excel as the Director of Operations and had no disciplinary action or negative performance evaluations.

13. As Plaintiff continued to work as the Director of Operations and develop Defendant's client base, he felt that the responsibilities of the Director of Operations role were too much for one individual to handle.

14. On or around March 19, 2019, Plaintiff returned from a planned vacation and met with Mr. Robins. During that meeting, Plaintiff discussed the responsibilities of the Director of Operations position and told Mr. Robins he believed they should be split and shared among two different Regional Director Roles, to manage the workload.

15. Near the end of March of 2019, Plaintiff took time off for medical reasons and returned to work on or about April 3, 2019.

16. Upon his return, Plaintiff became the Regional Director and shared his previous responsibilities with another colleague, as he suggested.

17. On April 4, 2019, Plaintiff signed a job description for the Regional Director role.

18. As Plaintiff continued to develop a thorough understanding of Defendant's operations, he began to notice multiple legal issues within the organization.

19. Primarily, Plaintiff noticed that many of his team members were not being compensated in accordance with the law, as they were hourly, non-exempt employees and should have been receiving overtime pay for on-site/on-call work.

20. Plaintiff brought his concerns regarding this issue to Zach Niner in or around January of 2019. After discussing the concerns of unpaid overtime with Niner, Plaintiff and Mr. Niner engaged in a phone conference with David Robins that same day to discuss Plaintiff's concerns that Defendants were not paying employees overtime wages in accordance with the law.

21. Mr. Robbins immediately asked what Team Members were discussing the concerns of unpaid overtime and backpay.

22. Plaintiff provided the names of the individuals who had discussed concerns of unpaid overtime and backpay.

23. As a result of Plaintiff raising these concerns, Robins provided backpay only to some of the Team Members. In particular, Robins provided backpay to Lachlan Limpscomb.

24. However, Robins told Mr. Limpscomb that he should not discuss the payment of back wages with any other employees.

25. Mr. Robins also began "promoting" employees into different positions, in an effort to re-classify them as exempt employees who were not entitled to overtime.

26. Robins was promoting the same employees who were previously entitled to overtime wages, so that they would be exempt from overtime pay.

27. Robins then invited Plaintiff and Zach Niner to his apartment to provide an update on the unpaid overtime issue. Robins stated that he told the employees if they sought any type of legal advice, they would not recover anything other than backpay.

28. Robins then told Niner and Plaintiff that any further communication regarding the unpaid overtime wages should not be discussed in writing. Robins stated all future conversations regarding unpaid overtime should only be discussed in person.

29. On or about April 14, 2019, Plaintiff sent an email to Zach Niner, Director of Human Resources, and copied Mr. Robins, stating that he believed the issue of unpaid overtime for these employees remained unresolved.

30. Plaintiff specifically stated that since he raised the issue regarding unpaid overtime, no action to correct the issue had been taken.

31. Plaintiff also highlighted the fact that these team members were now receiving overtime pay but that did not resolve the issue of unpaid overtime for past hours worked.

32. In this email, Plaintiff stated that he had concerns regarding age discrimination, as newer, younger employees were being hired and paid more than existing, more tenured employees, despite not having superior credentials to justify such pay.

33. In this email, Plaintiff also stated that he had concerns regarding gender discrimination, as women employees were not being treated the same as men. Specifically, more senior women were being paid less than younger men with less experience.

34. Several hours after sending the email, Plaintiff received a message from Zach Niner, requesting a meeting the following morning. Zach Niner scheduled the meeting for the purpose of terminating Plaintiff's employment.

35. Accordingly, Niner had made the decision to terminate Plaintiff only hours after Plaintiff reported that he had a reasonable belief that overtime violations were occurring, along with raising concerns about age and gender discrimination.

36. The very next day, on April 15, 2019, Niner drafted a memorandum terminating Plaintiff's employment with the company.

37. Plaintiff was officially terminated on April 16, 2019.

38. Prior to that, Plaintiff had received no disciplinary action and no negative performance evaluations.

39. Plaintiff was terminated in direct retaliation for reporting what he believed to be legal violations regarding unpaid overtime, age discrimination, and gender discrimination.

40. Any other proffered reasons for Plaintiff's termination are untrue, retaliatory, and pretextual.

## COUNT I
### Retaliation - FLSA

41. All of the preceding paragraphs are realleged as if fully rewritten herein.

42. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

43. Plaintiff engaged in a protected activity when he informed David Robins that he believed many of his team members were not being compensated in accordance with the law as it relates to overtime pay and by reporting to Zach Niner that the overtime issue was unresolved, as the employees had not received backpay for any overtime they may have worked during the relevant time period.

44. Defendant knew that Plaintiff engaged in such protected activity, as his complaints were raised during conversations with owner, David Robins and via email, with Director of Human Resources Zach Niner.

45. Shortly after Plaintiff engaged in such protected activity, Defendant terminated Plaintiff, with no legitimate reason for Plaintiff's termination.

46. A causal connection exists between Plaintiff's protected activity and his termination.

47. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action by terminating Plaintiff's employment and denying him the salary, benefits, and other terms, privileges, and conditions of employment for which Defendants are liable.

48. As a direct and proximate result of Defendant's willful and intentional conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. Accordingly, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available, as a result of Defendant's retaliation in violation of 29 U.S.C. §215.

## COUNT II
### Retaliation – Ohio Minimum Fair Wage Standards Act (OMFWSA) R.C. 4111.13

49. All of the preceding paragraphs are realleged as if fully rewritten herein.

50. This claim is brought pursuant to the Ohio Minimum Fair Wage Standards Act (OMFWSA) R.C. § 4111.13.

51. When analyzing retaliation claims asserted under the Ohio Minimum Fair Wage Standards Act, Ohio courts rely on federal case law interpreting retaliation claims under the FLSA. *See Murray v. Mary Glynn Homes, Inc*. No. 1:11 CV 00532, 2013 WL 4054595, at *16 (N.D. Ohio Aug. 12, 2013) (citing *Peterson v. Buckeye Steel Casings*, 729 N.E.2d 813, 821-22, 133 Ohio App.3d 715, 727 (10th Dist. 1999) ("When analyzing retaliation claims, Ohio courts rely on federal case law.").

52. Plaintiff engaged in a protected activity when he informed David Robins that he believed many of his team members were not being compensated in accordance with the law as it relates to overtime pay, and by reporting to Zach Niner that the overtime issue was

unresolved, as the employees had not received backpay for any overtime they may have worked during the relevant time period.

53. Defendant knew that Plaintiff engaged in such protected activity, as his complaints were raised during conversations with owner, David Robins and via email, with Director of Human Resources Zach Niner.

54. Shortly after Plaintiff engaged in such protected activity, Defendant terminated Plaintiff, with no legitimate reason for Plaintiff's termination.

55. A causal connection exists between Plaintiff's protected activity and his termination.

56. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action by terminating Plaintiff's employment and denying him the salary, benefits, and other terms, privileges, and conditions of employment for which Defendants are liable.

57. As a direct and proximate result of Defendant's willful and intentional conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. Accordingly, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available, as a result of Defendant's retaliation in violation of R.C. § 4111.13.

### COUNT III – Ohio Civil Rights Act
**(Retaliation – Reporting/Opposing Gender Discrimination)**

58. Plaintiff reasserts and reincorporates each and every allegation above as if fully rewritten here.

59. Plaintiff engaged in a protected activity by, *inter alia*, opposing and reporting gender discrimination in an email sent to Defendant's representatives on April 14, 2019.

60. Defendant was aware that Plaintiff engaged in a protected activity because Plaintiff sent the email to Zach Niner and David Robbins.

61. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against him by terminating his employment, by refusing to remedy the situation, and otherwise discriminating against him in the terms, privileges and conditions of his employment.

62. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

63. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

### COUNT IV – Ohio Civil Rights Act
### (Retaliation – Reporting/Opposing Age Discrimination)

64. Plaintiff reasserts and reincorporates each and every allegation above as if fully rewritten here.

65. Plaintiff engaged in a protected activity by, *inter alia*, opposing and reporting age discrimination in an email sent to Defendants on April 14, 2019.

66. Defendant was aware that Plaintiff engaged in a protected activity because Plaintiff sent the email to Zach Niner and David Robbins.

67. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against him by terminating his employment, by refusing to remedy the situation, and otherwise discriminating against him in the terms, privileges and conditions of his employment.

68. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

69. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $150,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Peter G. Friedmann, Esq.
Peter G. Friedmann (0089293)
Rachel A. Sabo (0089226)
(pete@tfflegal.com)
(rachel@tfflegal.com)
**The Friedmann Firm LLC**
1457 S. High Street

        Columbus, Ohio 43207
(614) 610-9756: Phone
(614) 737-9812: Fax

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ Peter G. Friedmann, Esq.
Peter G. Friedmann (0089293)